Honorable Stanley A. Bastian
Trial Date: February 28, 2023

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| USI INSURANCE SERVICES NATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> STANLEY OGDEN, et al. <br><br> Defendants. | Case No. 2:17-cv-01394-SAB <br><br> **Defendants' Opposition To Plaintiff's Motions** *In Limine* <br><br> **ORAL ARGUMENT REQUESTED** |

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE* -

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................. 1

II.  EVIDENCE REGARDING THE WELLS FARGO BANKING SCANDAL IS RELEVANT TO CAUSATION AND ADMISSIBLE ...................................................... 4

III. PLAINTIFF'S REQUEST FOR THE EXCLUSION OF "LAY OPINION TESTIMONY" ON DAMAGES IS OVERBROAD AND CONTRARY TO THE COURT'S SUMMARY JUDGMENT DECISION........................................................... 7

IV.  TESTIMONY FROM FORMER WFIS CUSTOMERS REGARDING THE PERCEIVED FAIRNESS OF RESTRICTIVE COVENANT AGREEMENTS IS RELEVANT AND ADMISSIBLE WITH RESPECT TO CAUSATION ...................... 10

V.   TESTIMONY REGARDING WITNESS'S PERCEPTION OF WFIS' FINANCIAL CONDITION IS RELEVANT TO CAUSATION………………………………………11

VI.  CONCLUSION................................................................................................ 12

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE* -

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Suite 2800
Seattle, WA 98101
+1.206.274.6370

Defendants Stanley Ogden ("Ogden"), Eleanor O'Keefe ("O'Keefe"), John Haskell, Jr. ("Haskell") and ABD Insurance and Financial Services, Inc. ("ABD")[1], by and through their undersigned counsel, respectfully submit this memorandum in opposition to Plaintiff's Motions *in Limine*.

## I. INTRODUCTION

Plaintiff's Motions *in Limine* improperly seek the exclusion of relevant and highly probative evidence on issues that are critical to the outcome of this case. At trial, Plaintiff intends to ask the jury for an award of at least **$10,154,824.00** in alleged consequential damages, representing ***ten years*** of allegedly lost profits that Plaintiff claims it would have earned if (i) Ogden and O'Keefe had not handled the insurance business of their former WFIS clients for two years after they resigned from Plaintiff, and (ii) if Haskell had not provided the name of Kurt de Grosz to Lewis Dorrington (even though Dorrington already knew and had met with de Grosz). As a result, two of the key issues that the jury will be called upon to decide are (a) whether the Defendants' breaches of contract actually *caused* Plaintiff to lose its customers and the ten years of profits it claims; and (b) the proper quantification of any losses Plaintiff proves it suffered.

Plaintiff's Motions *in Limine* seek the preemptive, blanket exclusion of entire categories of evidence that are directly relevant to the question of causation that is to be decided by the jury. To begin, Plaintiff asks the Court to exclude all evidence regarding the banking scandals at Wells Fargo that received sustained, national media attention in late 2016 and early 2017. Excluding this evidence would be patently unfair and misleading to the jury. As the Court may recall, Defendants worked for Plaintiff when the business was owned by Wells Fargo and was known as Wells Fargo Insurance Services ("WFIS"). Defendants intend to present testimony from witnesses, including former customers of Plaintiff, who will testify that in 2016, they were already looking to move their business away from Wells Fargo because of the high-profile banking scandals that plagued

---

[1] Ogden, O'Keefe, and Haskell are referred to collectively as the "Individual Defendants." The Individual Defendants and ABD are referred to collectively as "Defendants."

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE* - 1

Wells Fargo at that time, and that even if Defendants had not remained employed at WFIS, they may have moved their business. Once Ogden and O'Keefe left WFIS, clients serviced by those employees will testify that they most certainly would have left WFIS regardless of whether Ogden and O'Keefe could continue working on their accounts, because their trusted advisors were no longer there and they otherwise no longer trusted the Wells Fargo name, which had become synonymous with fraud. Similarly, Lewis Dorrington will testify that he was motivated to leave WFIS when he resigned due in large part to the banking scandals, which he no longer wanted to be associated with and his clients were telling him they no longer wanted to be associated with. Testimony regarding the impact of the scandal on Dorrington's and customers' decision-making process is thus directly relevant to the questions of (1) whether WFIS ever could have retained the clients it claims it lost, even if Ogden and O'Keefe had not serviced those clients at ABD, and (2) whether Lewis would have stayed at USI, even if Haskell had not given Dorrington Kurt de Grosz's name, and should be admitted at trial.

Plaintiff's Motions to exclude testimony regarding the "financial condition" of WFIS, or the perceived "unfairness" of the Individual Defendants' contracts should be denied for similar reasons. To the extent that Dorrington's or a customer's decision to leave WFIS was influenced by concerns about WFIS's financial condition, the jury should be permitted to take those concerns into consideration when assessing causation. Likewise, if a customer chose to stop doing business with WFIS because it believed the Individual Defendants' restrictive covenant agreements were "unfair," the jury is entitled to consider that reasoning as well. Plaintiff bears the burden of proving it would have retained Ogden and O'Keefe's clients if they did not service them at ABD for two years after their resignations from Plaintiff, and that it would have retained Dorrington (and his clients) if Haskell had not given de Grosz's name to Dorrington. Evidence that shows the clients or Dorrington would have left USI is directly relevant to the question of causation and the quantification of Plaintiff's claimed damages, and Plaintiff is not entitled to preclude witnesses from testifying regarding the true reasons they decided to stop doing business with WFIS simply

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE* - 2

because that testimony is unhelpful to Plaintiff's case. Accordingly, the Court should deny Plaintiff's First, Third, and Fourth Motions *in Limine*.

The Court should also deny Plaintiff's request to preclude Defendants from presenting "any lay or expert opinion testimony" in this case related to Plaintiff's alleged damages. At the outset, Plaintiff's Motion is based on the faulty premise that only retained experts may provide opinion testimony at trial, and in particular that only a retained expert may testify on the question of Plaintiff's damages. That is not true. It is well-established that "percipient experts," or, percipient witnesses with expertise in a field and involved in the events underlying the litigation, are permitted to rely upon their expertise when testifying about percipient facts, *i.e.,* facts within their own personal knowledge. *See, e.g., Matsuura v. E.I. du Pont De Nemours & Co.,* 2007 WL 433115, at *4 (D. Haw. Feb. 2, 2007) (percipient witnesses may offer opinions based on their personal knowledge and first-hand experience, so long as the information they testify about was not acquired in preparation for trial in the instant case); *Britz Fertilizers, Inc. v. Bayer Corp.,* 2009 WL 1748775, at * (E.D.Cal. June 17, 2009) ("percipient witness testimony is based on the firsthand experience of the witness").

Here, Defendant John Dorrington served as Managing Director of Plaintiff's Seattle office, where the other individual Defendants also worked when they worked for Plaintiff. *See* ECF No. 70, Plaintiff's Motion for Summary Judgment at 9:12. Plaintiff's damages theory relies explicitly on "financial statements" provided to Plaintiff's expert by Plaintiff about the performance and profitability of Plaintiff's Seattle office. *See* ECF No. 147-3, 7/16/2019 Expert Report of Peter H. Nickerson at 3-4. Those financial statements include costs and other information that Nickerson ignores in calculating his alleged lost profits. At trial, Haskell will testify about his personal experience as Managing Director of Plaintiff's Seattle office, including the costs involved in doing business in the office and that his job responsibilities at Plaintiff included reading and relying on Plaintiff's financial statements and customer account data, including the financial documents and data relied upon by Nickerson. Similarly, the other individual Defendants will testify about their

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE* - 3

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Suite 2800
Seattle, WA 98101
+1.206.274.6370

job responsibilities at Plaintiff, their historical client revenues, and the costs involved in their generation of those revenues. Haskell and the other individual Defendants will also testify about their experience preparing forecasts and budgets at Plaintiff, how far out they could reasonably forecast future revenues while they worked at Plaintiff and why, and why certain costs were included or excluded in the budgets they helped prepare and/or rely upon while working for Plaintiff. This testimony is based on their own percipient experiences and expertise, is directly relevant to this case and the reasonableness of the damages analysis that Plaintiff and its expert Nickerson will present, and is admissible. *See, e.g., Allied Systems, Ltd. v. Teamsters Auto. Transport Chauffeurs, Demonstrators & Helpers, Local 604, Affiliated with Int'l Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 304 F.3d 785, 792 (8th Cir. 2002) (bookkeeper's lay opinion as to damages to a business was admissible because of firsthand knowledge obtained from recordkeeping and a field audit); *United States v. Anderskow*, 88 F.3d 245, 250 (3d Cir. 1996) (lay opinion testimony can be based on the witness' "knowledge and participation in the day-to-day affairs of his [or her] business," and witness's weekly correspondence by telephone and fax provided sufficient first-hand knowledge to give lay opinion on lost profits); *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1175 (3d Cir. 1993) (lay testimony may be offered to show how lost profits could be calculated so long as the witness has personal knowledge of the pertinent accounting system and balance sheets); *Mississippi Chem. Corp. v. Dresser-Rand Co.*, 287 F.3d 359, 373-74 (5th Cir. 2002) (collecting cases). There is thus no basis for the Court to preclude such testimony here. For these reasons, and as described in greater detail below, the Court should deny each of Plaintiff's Motions *in Limine*.

## II. EVIDENCE REGARDING THE WELLS FARGO BANKING SCANDAL IS RELEVANT TO CAUSATION AND ADMISSIBLE.

The Court should deny Plaintiff's First Motion *in Limine,* which seeks the complete exclusion of evidence regarding Wells Fargo's fraudulent consumer banking practices, because such evidence is relevant to the causation questions that the jury must decide in this case. As

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE* - 4

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Suite 2800
Seattle, WA 98101
+1.206.274.6370

explained in more detail in Defendants' Motion *in Limine* No. 6, such evidence is relevant to (1) Dorrington's reasons for leaving WFIS and joining ABD; and (2) to former WFIS customers' decisions to end their business relationship with WFIS. Rather than confront the significant impact of this well-publicized scandal on Dorrington's and customers' decision-making process, Plaintiff instead requests that these individuals pretend it never occurred. This would unfairly deprive the jury of relevant evidence that is highly probative of key causation issues that remain to be tried.

As an initial matter, Plaintiff's Motion rests upon the false premise that Defendants intend to introduce evidence of the Wells Fargo banking scandals solely to "instill[] prejudice in the jury against USI." ECF No. 179 at 3. To the contrary, Defendants do not intend to delve into or dwell upon the Wells Fargo scandals in detail (unless required to do so to rebut evidence or argument by Plaintiff at trial minimizing the scandal or attempting to claim the scandal dated to a different time period, as Plaintiff incorrectly argues in its Motion *in Limine*). Instead, evidence regarding the existence of these scandals will be presented solely for context on the effect on the decisions of Dorrington and WFIS customers to leave WFIS.

This decision-making process is directly relevant to causation. To prevail on its contractual claim against Haskell, Plaintiff must establish that Haskell's sharing of Kurt de Grosz's name with Dorrington caused Dorrington to leave WFIS. Similarly, for the claims against Ogden and O'Keefe, Plaintiff must show that their customers would have kept their accounts at WFIS even if they could not be serviced by Ogden or O'Keefe at ABD. *See, e.g, Nw. Indep. Forest Mfrs. V. Dep't of Lab & Indus.,* 78 Wash. App. 707, 712, 899 P.2d 6, 9 (1995) (breach of contract is actionable only if breach proximately causes the damage and plaintiff must establish such causation).

Dorrington and former WFIS customers have already said in sworn statements that the Wells Fargo scandal influenced their decision to leave WFIS. *See, e.g.,* ECF No. 80, Dorrington Decl. ¶¶ 7-10; ECF No. 93, Kehoe Decl. ¶ 5; ECF No. 87, Carlson Decl. ¶ 5; ECF No. 96, Humphrey Decl. ¶ 7. It is therefore immaterial that WFIS and Wells Fargo Bank are separate

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE* - 5

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Suite 2800
Seattle, WA 98101
+1.206.274.6370

entities. As Plaintiff admits, WFIS and Wells Fargo Bank shared a parent company and obviously shared the Wells Fargo brand name. As a result, it is not at all surprising that customers would have concerns about continuing to do business with any Wells Fargo entity in light of the significant negative publicity associated with Wells Fargo at the time. Such testimony is relevant to causation, even if the concern was misplaced, which defendants do not believe it was.

Plaintiff's attempt to downplay the relevance of the negative publicity surrounding Wells Fargo Bank by suggesting that the "allegations arose no later than 2013" is also false and misleading. As explained in the Wikipedia entry for the "Wells Fargo cross-selling scandal," "News of the fraud became widely known in late 2016 after various regulatory bodies, including the Consumer Financial Protection Bureau (CFPB), fined the company a combined $185 million as a result of the illegal activity."[2] At that time, the CFPB announced it found that "thousands of Wells Fargo employees illegally enrolled consumers in [Wells Fargo] products and services without their knowledge or consent in order to obtain financial compensation for meeting their sales targets."[3] The effect of the CFPB's announcement was both devastating and public. The state of California and numerous other states and municipalities suspended their relationships with Wells Fargo starting that same month.[4] By October 2016, politicians of every stripe were calling for investigation beyond that done by the CFPB.[5] When Wells Fargo reported its earnings in January 2017, it announced it would close over 400 of its approximately 6000 branches by the end

---

[2] *See Wells Fargo cross-selling scandal*, Wikipedia, *available at* https://en.wikipedia.org/wiki/Wells_Fargo_cross-selling_scandal (last visited Jan. 16, 2023).

[3] *See Consumer Financial Protection Bureau Fines Wells Fargo $100 Million for Widespread Illegal Practice of Secretly Opening Unauthorized Accounts*, Consumer Financial Protection Bureau (Sept. 8, 2016), *available at* https://www.consumerfinance.gov/about-us/newsroom/consumer-financial-protection-bureau-fines-wells-fargo-100-million-widespread-illegal-practice-secretly-opening-unauthorized-accounts/) (last visited May 5, 2022); *see also* Blake, Paul, *Timeline of the Wells Fargo Accounts Scandal* (Nov. 3, 2016), *available at* https://abcnews.go.com/Business/timeline-wells-fargo-accounts-scandal/story?id=42231128 (last visited May 5, 2022) (noting that the "misconduct was revealed when the [CFPB], the Los Angeles City Attorney, and the Office of the Comptroller of the Currency fined the bank $185 million" in September 2016).

[4] Corkery, Michael, *California Suspends Ties With Wells Fargo The New York Times* (September 28, 2016), *available at* https://www.nytimes.com/2016/09/29/business/dealbook/california-wells-fargo-john-stumpf.html?_r=0.

[5] *Stumpfed* (October 13, 2016), *The Economist, available at* https://www.economist.com/finance-and-economics/2016/10/13/stumpfed?zid=300&ah=e7b9370e170850b88ef129fa625b13c4.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE* - 6

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Suite 2800
Seattle, WA 98101
+1.206.274.6370

of 2018.[6]  Indeed, Plaintiff's assertion that Defendant's "timeline is demonstrably false" is belied by its own citations to news reports.  *See* ECF No. 179 at 3 n. 1 (citing *Vanity Fair* article from **Summer 2017** – several months **after** Dorrington left WFIS).

In sum, there was significant negative publicity surrounding WFIS in late 2016 and early 2017 – the time-period at issue in this litigation – and the jury should be permitted to hear evidence regarding the impact that negative publicity had on Dorrington's and customers' decision to leave WFIS.  This evidence is highly probative of causation and Defendants' ability to discuss how the scandal impacted Dorrington's and customer's decisions is essential to their ability to have a fair trial and be able to put on their defense to Plaintiff's inflated, $10 million damage calculation.  The fact that it may also cast WFIS in a negative light does not warrant its exclusion and can be addressed through a curative instruction, if Plaintiff so requests, instructing the jury that the evidence is to be considered for the limited purpose of causation and not to Plaintiff's character. *Burke v. City of Santa Monica,* 2011 WL 13213593, at *6 (C.D. Cal. Jan. 10, 2011) (to be excluded under Rule 403, evidence must create a risk of unfair prejudice, "not simply the prejudice that any relevant evidence would create"); *Cadet Mfg. Co. v. Am. Ins. Co.,* 2006 WL 8455266, at *3 (W.D. Wash. June 28, 2006) ("Evidence is unfairly prejudicial only if it has an undue tendency to suggest to the jury that it should make a decision on an improper basis.").

### III. PLAINTIFF'S REQUEST FOR THE EXCLUSION OF "LAY OPINION TESTIMONY" ON DAMAGES IS OVERBROAD AND CONTRARY TO THE COURT'S SUMMARY JUDGMENT DECISION.

The Court should also deny Plaintiff's Second Motion *in Limine,* which seeks to preclude Defendants from presenting "lay or expert opinion" testimony on Plaintiff's damages or any other topic.[7]  Plaintiff's arguments are an improper attempt to re-litigate arguments the Court rejected

---

[6] Keller, Laura (January 13, 2017). "Wells Fargo Plans to Close More Than 400 Branches Through 2018". Bloomberg. Retrieved May 14, 2017.

[7] Defendants do not dispute that the Court has already determined that they may no longer disclose a retained expert witness. *See* ECF No. 173.  Consequently, and without waiving any right Defendants' have to appeal the prior order,

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE* - 7

on summary judgment and preclude Defendants from challenging USI's damage calculations at trial. *See* ECF No. 179 at 5:1-3. Because opinion testimony that is based on the Defendants' and Dorrington's particularized knowledge gained by virtue of their employment at WFIS and ABD is admissible, Plaintiff's Motion must be denied.

To begin, the Court has already rejected Plaintiff's contention that proof of damages in this case requires expert opinion testimony and that "lay opinion testimony" on Plaintiff's damages is inadmissible. *See* ECF No. 128 at 19:9-12. It is axiomatic that, all expert opinion must be grounded in fact, and Defendants should be permitted to test the factual bases underlying the opinions proffered by Plaintiff's experts R. Bryan Tilden and Peter Nickerson. Contrary to Plaintiff's suggestion, Defendants are not required to accept the damage calculations of Plaintiffs' experts as "completely accurate and reliable" simply because they have not proffered their own retained expert. *See* ECF No. 179 at 5:1-3.

The fundamental problem with Plaintiff's Motion is that it improperly seeks to exclude opinion testimony from "percipient witnesses." *See, e.g., Matsuura v. E.I. du Pont De Nemours & Co.,* 2007 WL 433115, at *3 (D. Haw. Feb. 2, 2007). A percipient witness is a witness who is an expert in a particular field and was also involved in the underlying litigation. *Id.* The classic example is a treating physician. *Id.* Such witnesses are permitted to state "expert" facts to a jury in order to explain their testimony, without being considered an expert witness under Rule 26(a). *Id.* (citing 6 Moore's Federal Practice § 26.23[2][b] (3d ed. 2001)). Percipient witnesses may offer opinions based on their personal knowledge and first-hand experience, so long as the information they testify about was not acquired in preparation for trial in the instant case. *Id.* at *4; *Britz Fertilizers, Inc. v. Bayer Corp.,* 2009 WL 1748775, at * (E.D.Cal. June 17, 2009) ("[P]ercipient witness testimony is based on the firsthand experience of the witness.")

Applying the above principles here, the Defendants and Dorrington should be permitted to

---

Defendants do not intend to call any retained expert at trial, unless the Court reconsiders or otherwise changes its prior order.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE* - 8

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Suite 2800
Seattle, WA 98101
+1.206.274.6370

testify regarding issues that are relevant to the calculation of damages based upon their status as percipient witnesses. For example, the Individual Defendants and Dorrington should be able to offer opinions—based on their personal knowledge—regarding the unique nature of the marine insurance industry, who their competitors in the marine insurance industry were, what costs are necessarily incurred for professionals in the industry to perform their jobs effectively, and USI/WFIS's ability to continue servicing clients in the marine insurance industry following their departure. While these opinions necessarily reflect some level of expertise, they were formed during the course of the Individual Defendants' employment at WFIS and ABD and during the events giving rise to this litigation. Accordingly, such testimony is admissible. *See, e.g.,* Fed. R. Evid. 701 (Committee Notes on Rules – 2000 Amendment) (explaining opinion testimony on topics like the projected profits of a business by the owner or officer of business is admissible "not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge of the witness by virtue of his or her position in the business").

Similarly, the individual Defendants and Dorrington—and in particular Haskell, who was the Managing Director at Plaintiff's Seattle office before he left Plaintiff to join ABD—should be permitted to testify about the financial documents and data that they had responsibilities for reviewing and relying on while they worked for Plaintiff. Haskell had percipient experience and expertise with the same financial documents and data that Plaintiff's retained expert Nickerson relies upon in his damages opinions. Haskell can add relevant, percipient testimony explaining the costs that are shown in those financial documents, and all individual Defendants can testify about their real-world experience preparing budgets and forecasts while working at Plaintiff. All of this real-world, percipient testimony will be directly relevant to the damages testimony that Plaintiff's retained expert was hired to present for this lawsuit, and it is admissible. *See, e.g., Allied Systems, Ltd.*, 304 F.3d at 792 (bookkeeper's lay opinion as to damages to a business was admissible because of firsthand knowledge obtained from recordkeeping and a field audit); *Anderskow*, 88 F.3d at 250 (lay opinion testimony can be based on the witness' "knowledge and

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE* - 9

Morgan, Lewis & Bockius LLP
Attorneys at Law
1301 Second Ave., Suite 2800
Seattle, WA 98101
+1.206.274.6370

participation in the day-to-day affairs of his [or her] business," and witness's weekly correspondence by telephone and fax provided sufficient first-hand knowledge to give lay opinion on lost profits); *Lightning Lube,* 4 F.3d at 1175 (lay testimony may be offered to show how lost profits could be calculated so long as the witness has personal knowledge of the pertinent accounting system and balance sheets).

At minimum, the Court should defer ruling on this Motion until particular evidence or testimony is presented at trial. Plaintiff has failed to identify any actual "lay opinion testimony" or "percipient expert testimony" that it believes should be excluded. Accordingly, it is not possible for the Court to make any definitive ruling as to admissibility. *See Kingston v. Int'l Bus. Mach. Corp.,* 2021 WL 1158191, at *2 (W.D. Wash. March 26, 2021) (reserving ruling on motion *in limine* where Plaintiff had "not identified any specific evidence or testimony to which the motion applied"); *Turner v. Univ. of Wash.,* 2007 WL 2984682, at *1 (W.D. Wash. Oct. 10, 2007) ("A court considering a motion *in limine* may reserve judgment until trial, so that the motion is placed in the appropriate factual context."). The Court should therefore, at a minimum, reserve judgment until presented with live testimony for consideration.

### IV. TESTIMONY FROM FORMER WFIS CUSTOMERS REGARDING THE PERCEIVED FAIRNESS OF RESTRICTIVE COVENANT AGREEMENTS IS RELEVANT AND ADMISSIBLE WITH RESPECT TO CAUSATION

In its Third Motion *in Limine,* Plaintiff seeks an order barring "all evidence, testimony, or argument regarding any of the contracts at issue being 'unfair.'" ECF No. 179 at 2:6-7. Neither Defendants nor their counsel intend to introduce testimony or argument regarding the "fairness" or "unfairness" of the Individual Defendants' contracts. Nevertheless, Defendants oppose Plaintiff's Third Motion *in Limine* to the extent that it purports to prevent former WFIS customers—over whom Defendants have no control—from testifying about a potential reason for their decision to leave WFIS. Defendants are not aware of any testimony in the record describing the contracts at issue as unfair (and Plaintiff has identified none). However, customers may testify

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE* - 10

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Suite 2800
Seattle, WA 98101
+1.206.274.6370

that they decided to stop doing business with WFIS because they learned about their brokers' restrictive covenant agreements, and did not believe it was fair for WFIS to prevent them from continuing their relationship with their preferred broker. This testimony would be more probative than prejudicial because it has no tendency to suggest decision on an improper basis.[8] To the contrary, it would provides a description of a relevant factor that a customer may have considered when ending their business relationship with WFIS.

## V. TESTIMONY REGARDING WITNESS'S PERCEPTION OF WFIS' FINANCIAL CONDITION IS RELEVANT TO CAUSATION

The Court should also deny Plaintiff's Fourth Motion *in Limine,* which seeks to bar all evidence, testimony, or argument regarding WFIS's "financial condition." Defendants do not intend to introduce evidence or argument regarding financial condition of WFIS or USI in the abstract, but they do intend to introduce such testimony to the extent it relates to the reasons that Dorrington and/or customers decided to leave WFIS. Witnesses should be permitted to testify regarding their perception of WFIS's financial condition if it played a role in their decision to leave WFIS. These perceptions are relevant to causation, which Plaintiff must establish through proof that Dorrington and customers would have remained at WFIS if the Individual Defendants had not breached their contracts. *See* Fed. R. Evid. 401 ("Evidence is relevant if it has any tendency to make a fact more or less probable than it would have been without the evidence; and the fact is of consequence in determining the action.").

Contrary to Plaintiff's assertion, Dorrington's concerns about WFIS's finances are not an "after-the fact" or "alternative theory" that Defendants are raising for the first time at trial. *See* ECF No. 179 at 12:13-16. Dorrington has already stated under oath that he resigned his employment at WFIS due to its "uncertain future" in the wake of negative publicity associated with WFIS and Wells Fargo Bank, specifically noting his belief that the WFIS Seattle office would

---

[8] It is also somewhat ironic that Plaintiff contends that the mere potential that a witness *might* describe a contract as "unfair" is unduly prejudicial, while simultaneously planning to rely on far more inflammatory language to describe Defendants' conduct as a "raid" or "piracy" to the jury. *See* ECF No. 181 at 8-10.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE* - 11

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Suite 2800
Seattle, WA 98101
+1.206.274.6370

be sold off to a competitor. *See* ECF No. 80, at ¶¶ 3, 7. Given the significant negative publicity surrounding Wells Fargo at the time, it is likely that customers had similar concerns. It would therefore be unfair and prejudicial for the Court to prevent the jury from hearing testimony on this topic to the extent it impacted clients' decision-making process.

Plaintiff's contention that WFIS's financial condition is outside the personal knowledge of Defendants' witnesses is also without merit. Whether a witness had direct knowledge of the actual financial condition of WFIS when making their decision to leave WFIS is irrelevant. The only thing that matters is the witness's *perception* of the situation. Testimony regarding these sorts of perceptions is expressly permitted under Rule 602. Indeed, the Advisory Comments to Rule 602 recognize that "personal knowledge is not an absolute but may consist of what the witness ***thinks he knows from personal perception.***" *See* Fed. R. Evid. 602 (Original Committee Notes) (emphasis added). Thus, there is no basis to exclude testimony regarding witness's perceptions of WFIS's financial condition under Rule 602. Likewise, there is no risk of unfair prejudice or confusion of the issues. Testimony regarding Dorrington's or a client's reason for leaving WFIS does not have an "undue tendency to suggest to the jury that it should make a decision on an improper basis." *Cadet Mfg. Co. v. Am. Ins. Co.,* 2006 WL 8455266, at *3 (W.D. Wash. June 28, 2006). To the contrary, the reasons that Dorrington and clients decided to leave WFIS are precisely what the jury must weigh and assess to determine whether Plaintiff suffered any damages resulting from Defendants' breach of contract. As a result, such evidence is more probative than prejudicial, and Plaintiff's Motion should be denied.

## VI.   CONCLUSION

**FOR THE FOREGOING REASONS,** Defendants respectfully request that the Court enter an order denying Plaintiff's Motions *in Limine*.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE* - 12

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Suite 2800
Seattle, WA 98101
+1.206.274.6370

| | | |
|---|---|---|
| 1 | Dated: January 17, 2023 | MORGAN, LEWIS & BOCKIUS LLP |

By:  /s/ *Molly A. Terwilliger*
Molly A. Terwilliger (WSBA #28449)
1301 Second Ave., Suite 2800
Seattle, WA 98101
Tel: (206) 274-6370
Fax: (206) 274-6401
Molly.Terwilliger@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP

*/s/ Debra L. Fischer*
Debra L. Fischer (*pro hac vice*)
2049 Century Park East, Suite 700
Los Angeles, CA 90067-3109
Tel: (310) 907-1111
Fax: (310) 907-1001
Debra.Fischer@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP

*/s/ Patrick R. Duffey*
Patrick R. Duffey (*pro hac vice*)
110 N. Wacker Drive, Suite 2800
Chicago, IL 60606
Tel: (312) 324-1000
Fax: (310) 324-1001
Patrick.Duffey@morganlewis.com

CROWELL & MORING LLP

*/s/ Christopher J. Banks*
Christopher J. Banks (*pro hac vice*)
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Tel:  (415) 986-2800
Fax:  (415) 986-2827
CBanks@crowell.com

*Attorneys for Defendants*

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE* - 13

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Suite 2800
Seattle, WA 98101
+1.206.274.6370

## **CERTIFICATE OF SERVICE**

I hereby declare that on this 17th day of January, 2023, I caused a copy of the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Anne E. Reuben (areuben@littler.com)
Megan Crowhurst (mcrowhurst@littler.com)
Thomas Patrick Holt (tholt@littler.com)

                                                            */s/ Patrick R. Duffey*

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE* - 14

MORGAN, LEWIS & BOCKIUS LLP
Attorneys at Law
1301 Second Ave., Suite 2800
Seattle, WA 98101
+1.206.274.6370